[Crim. No. 10651.   In Bank.   Apr. 19, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RUSSELL GLENN MERRIAM, JR., Defendant and Appellant.

Joseph DeCristoforo, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Stephen Cooper, Deputy Attorney General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant was charged by information with two counts of indecent exposure (Pen. Code, § 314, subd. 1),[1] a misdemeanor. The information also charged a prior conviction of the same crime in December of 1963. Defendant, represented by counsel, pleaded not guilty to each count of the information but admitted the prior conviction. A jury found him guilty as charged. After appropriate diagnostic proceedings (Welf. & Inst. Code, § 5500 et seq.; Pen. Code,

[1]Section 314 of the Penal Code provides as follows:
"Every person who wilfully and lewdly, either 1. Exposes his person, or the private parts thereof, in any public place, or in any place where

§ 1203.03), defendant was sentenced to state prison for the term prescribed by law. He appeals from the judgment of conviction.

The offense charged in the second count was prior in time to that charged in the first. Since counsel for both parties in their briefs have discussed the two incidents in chronological order, we will do the same.

### Count Two (Mrs. Wolf incident)

On the morning of March 12, 1965, Mrs. Alyce Wolf was sitting alone in the living room of her basement apartment when she felt a draft of cool air and noticed that the door between the living room and a back storeroom was open. She went to the door, then decided to check some clothes that she had hanging in the storeroom. In the storeroom she found defendant. He was naked, having placed his clothes on a table in the room, and he was masturbating. She demanded that he leave, and when he would not, she grabbed his arm and attempted to dislodge him from the corner in which he was standing. During the struggle she observed his emission. Defendant would not be dislodged from his corner but he said that if Mrs. Wolf would leave him alone for a few minutes he would leave the premises. Mrs. Wolf went to seek help from one of the upstairs tenants, but the tenant was not at home so she returned to her apartment and called the police.[2] She went to the front of the house to await their arrival, and while she was waiting she peered through a broken pane in her garage door and saw defendant kneeling down and tying his shoes. She said to him ''You're still here; I want you to get out.'' He looked up at her, and departed through the back door of the garage. The police arrived shortly thereafter and Mrs. Wolf showed them the storeroom area. A day or so later she noticed on one of the clothing bags in the storeroom a stain which subsequent chemical analysis proved to be semen.

---

there are present other persons to be offended or annoyed thereby; or, 2. Procures, counsels, or assists any person so to expose himself or take part in any model artist exhibition, or to make any other exhibition of himself to public view, or the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts, is guilty of a misdemeanor.

''Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288 of this code, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison for not less than one year.''

[2] The police log reflected this call.

About three days after the incident defendant was brought to Mrs. Wolf's apartment in the custody of police, and she identified him at that time.

## Count One (Mrs. Walker incident)

On the afternoon of May 3, 1965, Mrs. Esperanza Walker was at a laundromat washing clothes. Except for the owner's son, who was painting at the front of the building, she was alone in the establishment. Defendant entered through the back door and stood near another doorway while Mrs. Walker folded clothes at a table. She looked up and saw that he had exposed himself and was holding his penis in his hand, facing her. She was momentarily uncertain as to what to do, and she continued folding clothes as she watched him out of the corner of her eye. Defendant then moved out of her sight behind a wall, and Mrs. Walker went to the front of the store to seek assistance from the owner's son.

The latter, Mr. Howard, testified that after Mrs. Walker had spoken to him he walked out of the rear entrance of the laundromat and observed defendant hurriedly backing a car out of a parking space; that defendant collided with a garage door; that Mr. Howard told him the whereabouts of the owner of the garage and defendant left his car to look for the owner; that he (Mr. Howard) then returned to the laundromat and summoned his father, who had been working in the boiler room; that the two returned to the parking lot and observed defendant returning to his car; that they told defendant that a lady within the laundromat had a complaint against him; and that defendant returned with them to the laundromat and was identified by Mrs. Walker.

Defendant did not testify but he presented two witnesses in defense to the accusation of Mrs. Wolf. Richard Warren, the admissions officer at the college where defendant was a student, testified that after defendant's arrest he had gone to Mrs. Wolf and had asked to see the scene of the incident. She complied with his request, and he noted that the garage, where Mrs. Wolf had observed defendant through the broken windowpane tying his shoe, was quite dark even during daylight hours. Donald Biagi, the captain of the college track team, of which defendant was a member, testified that he saw and spoke with defendant at school during or near the period of time defendant was alleged to have committed the offense

in Mrs. Wolf's storage room.[3] No defense was made to the charges involving Mrs. Walker.

Defendant first contends that the trial court erred when it refused to give a cautionary instruction to the effect that, in prosecutions for sex offenses, accusations are easy to make and difficult to disprove, and the testimony of complaining witnesses should be examined with caution. We observe that instructions of this kind, though originally required only in cases of forcible rape (see *People* v. *Benson* (1856) 6 Cal. 221 [65 Am.Dec. 506]), are now mandatory in many other kinds of sex prosecutions,[4] and that in some of the cases there is language indicating that failure to give the instruction in any ''sex case'' is error, whether or not such an instruction is requested by defendant. (See *People* v. *Sutton* (1964) 224 Cal.App.2d 708, 710-711 [37 Cal.Rptr. 23].)

In *People* v. *McGhee* (1954) 123 Cal.App.2d 542, at page 544 [266 P.2d 874], it was stated that ''The reasons given for requiring the cautionary instruction in cases involving sex offenses, particularly where the testimony of the complaining witness is uncorroborated . . . are (1) the fact that the only available direct witnesses are ordinarily the complaining witness and the defendant, and hence the charge is easy to make and difficult to disprove; (2) cases involving sex crimes generally arouse passion and prejudice in the minds of decent people, including jurors; (3) the ease with which the charge can be made to satisfy spite, vengeance, vindictiveness and other base motives.'' The Attorney General here urges that the bulk of these reasons are not applicable to prosecutions brought pursuant to section 314 of the Penal Code. First, it is pointed out that indecent exposure often occurs in public places, so that fabrication is rendered more difficult. Second, the ''victim'' of indecent exposure is not ''molested'' in any physical sense, so that passion and prejudice on the part of jurors is less likely to be a factor. Finally, the usual case of

[3]The police log reflected that Mrs. Wolf's call had been received at 11:07 a.m. Biagi testified that he had seen defendant at approximately that time, but he admitted on cross-examination that it could have been as late as 11:30, or even later, that he saw defendant.

[4]See, for example, *People* v. *Adams* (1939) 14 Cal.2d 154 [93 P.2d 146] (child molesting); *People* v. *Sutton* (1964) 224 Cal.App.2d 708 [37 Cal.Rptr. 23] (incest); *People* v. *Moore* (1961) 196 Cal.App.2d 91 [16 Cal.Rptr. 294] (abduction of a woman for defilement); *People* v. *House* (1958) 157 Cal.App.2d 151 [320 P.2d 542] (assault with intent to commit rape); *People* v. *Quock Wong* (1954) 128 Cal.App.2d 522 [275 P.2d 778] (pandering); *People* v. *McGhee* (1954) 123 Cal.App.2d 542 [266 P.2d 874] (pimping).

indecent exposure does not involve a preexisting personal relationship which could give rise to motives of private vengeance.

It is quite true that indecent exposure prosecutions do not involve the substantial dangers of fabrication, whether or not based on motives of private vengeance, that are present in other kinds of sex offenses. (See and compare, *People* v. *McGhee, supra,* 123 Cal.App.2d 542.) However, it must be conceded that the kind of act here at issue is so thoroughly repugnant to the average person that it can breed that righteous outrage which is the enemy of objective fact finding. In addition, the shocking nature of the act might well lead a complaining witness to hasty identification of the alleged perpetrator. ■ For these reasons we hold that one charged with violation of section 314 of the Penal Code should be afforded the protection of a cautionary instruction, and that failure to so instruct constitutes errror—regardless of whether or not the instruction is requested. (Cf. *People* v. *Putnam* (1942) 20 Cal.2d 885, 888-892 [129 P.2d 367].)

It remains to be determined, however, whether in the circumstances of this case the trial court's erroneous refusal of the cautionary instruction resulted in prejudice to the defendant. It has been said that such refusal does not constitute prejudicial error if "the evidence clearly points to the defendant's guilt, or . . . the testimony of the prosecuting witness is amply corroborated, or there are other factors in the case which show that the defendant has been given a fair trial." (*People* v. *Owsley* (1946) 76 Cal.App.2d 166, 169-170 [172 P.2d 561].) ■ The application of this standard to the instant case compels the conclusion that no prejudice accrued to defendant as a result of the trial court's failure to give the requested instruction.

In the first place, the testimony of each of the complaining witnesses was clear, assured, and free from indications of inconsistency, improbability, or fabrication. (See *People* v. *Stangler* (1941) 18 Cal.2d 688, 693-695 [117 P.2d 321]; cf. *People* v. *Benson, supra,* 6 Cal. 221.) Secondly, each of the complaining witnesses had ample opportunity to observe defendant for purposes of identification, and the record reveals that searching cross-examination in no way weakened their respective convictions as to the identity of the wrongdoer. Thirdly, other witnesses gave evidence of circumstances and facts in corroboration of the primary testimony. The testimony of Mrs. Wolf was lent plausibility by the notation

in the police log evidencing her call at the time of the offense, and by the presence of semen stains upon the clothes bag in her storeroom. Mrs. Walker's testimony was supported by that of Mr. Howard. Certainly, the testimony of each of the complaining witnesses reveals no motive of private vengeance. Finally, it appears that appropriate instructions were given which cautioned the jury against being influenced by passion or prejudice and required that it judge the case according to the evidence as presented at trial and the law as expounded by the court. (See *People* v. *Lucas* (1940) 16 Cal.2d 178, 183 [105 P.2d 102, 130 A.L.R. 1485].)

In these circumstances, and after a careful examination of the record in accordance with article VI, section 13, of the California Constitution, we conclude that it is improbable that the jury would have rejected the testimony of either of the prosecuting witnesses had a cautionary instruction been properly given, and that therefore there has been no miscarriage of justice requiring reversal of the judgment. (See *People* v. *Nye* (1951) 38 Cal.2d 34, 41 [237 P.2d 1].)

Defendant further contends that the judgment should be reversed insofar as it determines that he had suffered a prior conviction for violation of section 314, subdivision 1, of the Penal Code.[5] It is pointed out that the trial herein occurred previous to the decisions of this court in *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913], and *In re Luce* (1966) 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918], and it is therefore argued that counsel's failure at trial to challenge the prior on the ground of constitutional defects as to right to counsel cannot foreclose his mounting such a challenge at this time. He now seeks to do so by alleging in his brief that "the record is silent on the issue of appellant's representation or waiver of counsel at the time of the prior conviction."

It is of course obvious that the instant case differs from *Woods* and *Luce* (see also *In re Tucker* (1966) 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921]) in that here the prior conviction is sought to be challenged for the first time on direct appeal from the judgment wherein such prior was found to be true, whereas in the earlier cases the challenge was brought through collateral attack after such judgment had become final. This difference is a significant one. It is elementary that the function of an appellate court, in

---

[5]As noted above (see fn. 1, *supra*), the prior conviction served to elevate both counts to felony status. (See *In re Luce* (1966) 64 Cal.2d 11 [48 Cal.Rptr. 694, 409 P.2d 918].)

reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings,[6] and that "Matters not presented by the record cannot be considered on the suggestion of counsel in the briefs." (*People* v. *Hernandez* (1957) 150 Cal.App.2d 398, 402 [309 P.2d 969]; see generally Witkin, Cal. Criminal Procedure (1963) § 682, p. 666.)      It is therefore clear that we cannot consider on direct appeal the matter here sought to be raised.

Further, and even if the limited scope of direct appeal did not preclude our present consideration of defendant's contention, it is clear that defendant, through unsworn statements of counsel to the effect that "the record[7] is silent" on the issue of representation by counsel, has not made the kind of allegation necessary to constitutional inquiry under our *Woods* and *Luce* decisions. One seeking to challenge prior convictions charged against him may do so only through a clear allegation to the effect that, in the proceedings leading to the prior conviction under attack, he *neither was represented by counsel nor waived the right to be so represented.*

Defendant relies on *People* v. *Shanklin* (1966) 243 Cal. App.2d 94 [52 Cal.Rptr. 28]. There the defendant, charged with petty theft and a prior felony conviction, admitted the prior conviction, pleaded guilty to the petty theft charge, and was sentenced to state prison.[8] No constitutional defect in the prior conviction was alleged at trial, and the issue was apparently not raised by defendant on appeal. The Court of

---

[6]The only exception to this rule occurs upon an application to produce additional evidence pursuant to rule 23(b) of the Cal. Rules of Court. No such application has been here made. Furthermore, it is doubtful that such an application, if made, would be granted in the circumstances of the instant case. (See *People* v. *Benford* (1959) 53 Cal.2d 1, 6-7 [345 P.2d 928].)

[7]It is significant that counsel for defendant does not identify the "record" upon whose "silence" he relies. If he has reference to the transcript, minutes, and judgment of the proceedings wherein defendant admitted the prior conviction, it is clear that the silence of this record is the very factor which precludes our consideration on direct appeal of the issue sought to be raised. The failure of the record *of the proceedings leading to the prior conviction itself* to establish representation by, or an intelligent waiver of, counsel is a pertinent factor supportive of allegations of constitutional defect, but such failure is of no relevance absent allegations properly made.

[8]Section 667 of the Penal Code provides that "Every person who, having been convicted of any felony either in this State or elsewhere, and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for such offense, commits petty theft after such conviction, is punishable therefor by imprisonment in the county jail not exceeding one year or in the state prison not exceeding five years."

Appeal, however, apparently upon its own initiative, held that the cause should be returned to the trial court for inquiry into the constitutional basis of the prior. Relying on *In re Woods, supra,* 64 Cal.2d 3, and related cases, the court said that ''an admitted prior conviction of a crime which may be used for an adjudication of habitual criminality or for the purpose of elevating an offense from a misdemeanor to a felony status (*In re Luce, supra*) makes it incumbent upon the trial court to ascertain whether or not at the time of the former conviction or guilty plea a defendant was properly advised of his constitutional right to legal assistance and whether or not he had counsel or knowingly waived the right to counsel at that former conviction.'' (*People* v. *Shanklin, supra,* 243 Cal.App.2d 94, 101-102.) However, as we have pointed out above, the burden of initiating inquiry into the constitutional basis of a prior conviction lies with him who would challenge its validity rather than with the trial court. The *Shanklin* decision therefore must be and is hereby disapproved to the extent that it is inconsistent with the views above expressed.

Finally, we are not persuaded by defendant's argument that, because the proceedings upon the basic offense took place prior to our decisions in *Woods* and related cases, he could not be expected to raise the matter of constitutional defects in the prior at that proceeding—and that he must therefore be allowed to raise it for the first time on appeal. As pointed out above, the scope of direct appeal is limited by the trial record. In the event that defendant is presently able to make the allegations necessary to raise the issue in question, a remedy by way of collateral attack upon the judgment remains available to him.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.