[Crim. No. 465. Fifth Dist. Apr. 30, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EVERETT MONROE HARRIS, Defendant and Appellant.

J. M. Lopes for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—Everett Monroe Harris, a storekeeper of Exeter, was convicted of embezzlement as alleged in count II of the information. The victim of his felonious wrong-doing was Western States Money Orders, Inc., which had previously named the defendant in an agreement with him as one of its agents for the sale of money orders.

In the original information, the defendant was charged with four felonies:

Count I: He was accused of fraudulently and feloniously embezzling money which was the personal property of Western States Money Orders, Inc.;

Count II: He was charged with wilfully, unlawfully and feloniously conspiring with Mary Harris, also known as Mary Dyer, his wife, and Thomas R. Leach, who, with the appellant, conducted the store known as the Exeter Superette;

Counts III and IV: In each of two instances, he was accused of fraudulently issuing a bank check, knowing at the time of such making and delivering that he had not sufficient funds or credit with "the bank on which it was drawn" to meet said check in full upon its presentation for payment.

Mary Harris was found not guilty, and Thomas R. Leach, as relative immunity, was given probation including, as a condition, a short term in jail for his guilty participation in count II. The court in the case found Harris guilty of counts I and II, but not guilty of counts III and IV. The defendant, through his attorney, made a motion for a new trial, which was denied. The trial judge, after considering the probation officer's report and after suspending imposition of sentence for five years, stated that such time would be considered the term of probation; as conditions for probation, the defendant was committed to the custody of the Tulare County sheriff for 240 days, less 19 days for which credit was given, and was ordered to make restitution in the amount of $2,941.65, of which $41.97 was to be paid to the probation officer for the account of the aggrieved parties within 30 days after his release from custody and the sum of $60.41 on a corresponding day of each month until the entire amount should be paid. The usual requirement was made that the defendant obey all rules and special instructions given him by the probation officer or the court during the term of probation.

Two arguments are specifically set out as grounds of appeal by counsel for the appellant:

1) That the witness, Leach, was an accomplice, and that his testimony was not corroborated as required by section 1111 of the California Penal Code; and

2) That the district attorney impeached the testimony of the defendant while he was on the witness stand without laying the necessary foundation. In our opinion, neither of these alleged errors is supported by the law or the evidence.

Western States Money Orders, Inc. has agents representing it scattered about the country. When money orders are written for applicants by an agent in this locality and are presented for payment, through channels or directly, there is a central fund for the purpose maintained at First National Bank in Fresno, where the orders are ultimately cashed. Its agents, such as Mr. Harris, are supposed to report to their principal, Western States Money Orders, Inc., at intervals of not more than three days, what amounts of money orders have been sold and to send the monies paid to them to the central organization. The basic agreements between Western States Money Orders, Inc. and each agent in localities such as Exeter require that such agent refrain from personal use of any of the money orders.

G. D. Conley[1] was the general manager of the money order organization, and Claud Durham its field representative.

The market, named the Exeter Superette, was operated by appellant and his codefendant Leach. The appellant entered into a contract with the Western States Money Orders, Inc. on October 19, 1965, by which the appellant was named agent. Appellant then gave Mr. Durham, the field man for Western States, a financial statement, and, on the basis of such showing, the agent was allowed to write money orders with the 50 blank orders originally entrusted to him. The defendants almost at once turned to a felonious appropriation of the money to which they were given access. In the agency agreement, the agent had agreed to hold in a trust account all money received by him from the sale of money orders separate and apart from any other funds. Unquestionably, the full explanation of the system given to the appellant made him understand that he was to mail to Western States Money Orders, Inc. a report of such orders sold and a check for the total amount received from such sales every three days or at least twice a week.

On October 26, 1965, money orders numbered DO107966 and DO107968 were received by Mr. Warner Walker in payment of appellant's account concerning the real property upon which the Exeter Superette was located. Each of these was a money order for $125, with the appellant named as the sender. Obviously, these money orders appropriated by the person conducting the Exeter Superette were for the account of the defendant's store and had nothing to do with any obligation of Western States Money Orders, Inc.

The record shows that money order numbered DO107967, with appellant as the sender, was given to the Smart & Final Wholesale Co. in payment of groceries purchased by the Exeter Superette in the amount of $107.89.

On November 1, 1965, Western States Money Order DO107970, in the sum of $29, with appellant as sender, was received by the Laurentide Finance Co. in Exeter for appellant's account.

On November 2, 1965, to open a bank account, Mary Harris, appellant's wife, deposited money orders numbered DO107997 and DO107998 in the total sum of $300 with appellant as sender. On November 5, 1965, Mrs. Harris deposited additional money orders to the same account.

---

[1] No relative of the author of this opinion and not personally known to him.

The record shows that money orders numbered DO107979 and DO107978 were received by Randolph's Wholesale Foods in Visalia and credited to the account of the Exeter Superette.

On November 9, 1965, 12 Western States money orders were deposited in the bank account of McCall Grocery, owned by Thomas R. Leach but as to which there is evidence the appellant had an interest. These money orders totaled $1,800. Each of them was made out to the McCall Grocery and the ostensible sender was Mary Dyer (the maiden name of Mary Harris), appellant's wife. There was evidence that the name Mary Dyer was signed by Thomas Leach at the suggestion of appellant. While this fact is disputed by an assertion that Leach signed Mary Dyer's name upon her request, the evidence indicates that Harris directed the execution of the checks. On November 10, 1965, Leach wrote a check payable to the Exeter Superette in the amount of $1,806.36.

Appellant's first report to Western States Money Orders, Inc. of money order sales was dated October 25, 1965, and a check in the amount of $813.51 accompanied it. The check was not paid until it was redeposited.

The second report, dated October 29, 1965, was sent with a check in the amount of $2,629.96. This check was not honored by the bank; it was returned because of insufficient funds, and it has never been paid.

The third report, dated November 5, 1965, was accompanied by a good check for $2,252.63, which was paid in due course. The next report was sent with a check for $3,868.40; the report was dated November 12, 1965. The general manager of the money order company telephoned the Security National Bank at Visalia to see if the paper would clear if deposited, and he was told that it would not. On November 17, 1965, appellant met with Mr. Conley and informed him that he had closed his account with Security National Bank in Exeter and had opened a new account with the Crocker Citizens Bank in Visalia; appellant then replaced the earlier check with one drawn on the new account, and it did clear.

The record shows that the appellant and Mr. Conley, at their meeting on November 17, 1965, compiled a current report of funds due the money order company totaling $2,416.65. When a check for this amount was presented to the Crocker Citizens Bank, it was refused. This amount has never been paid.

Mr. Conley then took steps to close out the money order

agency because of appellant's noncompliance with the terms of his agreement and the fact that checks sent by Harris in several instances had been refused. On November 22, 1965, appellant wrote a check for $300.35 to cover the two money orders remaining in his possession when the agency was closed. Apparently, this check also never cleared. The books of Western States Money Orders, Inc., as shown by the evidence, noted accounts receivable from Exeter Superette in the sum of $4,412.47.

THE TESTIMONY OF THE ACCOMPLICE, THOMAS R. LEACH WAS PROPERLY CORROBORATED, PURSUANT TO THE REQUIREMENTS OF PENAL CODE SECTION 1111.

Section 182 of the Penal Code makes it a felony to conspire to commit a felony. Section 183 of the Penal Code limits conspiracies which are punishable to those set out in section 182, and section 184 provides that an agreement does not amount to a conspiracy unless an overt act is committed. All of the necessary elements here have been proven.

1 Witkin, California Crimes (1963) Elements of Crime, section 105, page 99, explains conspiracy as a combination of people to accomplish by united action a criminal purpose, or to accomplish a purpose which is not in itself criminal by criminal means, and effectuation of such agreement by an overt act committed by one or more of the parties involved. Mr. Witkin's work calls it a criminal partnership and says the elements are (1) agreement, (2) specific intent, (3) two or more persons, (4) unlawful object or means, and (5) overt act.

Section 1111 of the California Penal Code reads as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

On recross-examination, defense counsel questioned Mr. Leach as to whether he had been promised immunity from any charge of forgery in exchange for his testimony at the trial, and the witness answered, "Yes," admitting that the promise was made by the district attorney's office. Leach also stated

that he was aware of the fact that originally he had been charged in the justice court with both embezzlement and conspiracy to commit embezzlement, but that as a matter of fact, he was required to plead in the trial court only to the conspiracy to commit embezzlement charge, and, also, as a result of his plea of guilty that he was given probation with 90 days in jail as a condition, and with credit for time already served.

■ The necessary corroboration of the accomplice may be made either by direct or circumstantial evidence. (See *People* v. *Wynkoop,* 165 Cal.App.2d 540 [331 P.2d 1040].) It must, of course, tend to connect the defendant with the crime (*People* v. *Thurmond,* 170 Cal.App.2d 121 [338 P.2d 472].) **[1b]** It is apparent that the used money orders which were introduced into evidence corroborate the testimony of the accomplice, Leach, that the money orders were being employed by defendants to stock the Exeter Superette and to pay the expenses caused by the operation of the store (*People* v. *Pearson,* 168 Cal.App.2d 323 [335 P.2d 729]). In addition, there were many items of evidence which corroborated the testimoney of Leach. He acknowledged, it will be remembered, that he and appellant had issued various money orders for the purpose of financing the Exeter Superette. Ada Greer testified that appellant gave her money orders in return for her check in order that obligations of the Exeter Superette could be met, and G. D. Conley testified that appellant told him he was using the money to stock a store. The evidence of Mr. Leach was fully corroborated within the meaning of Penal Code section 1111.

THE DEFENDANT HARRIS WAS PROPERLY IMPEACHED BY THE INTRODUCTION IN EVIDENCE OF THE FACT OF A PRIOR FELONY CONVICTION.

■ When the appellant Harris chose to take the stand as a witness in his own behalf, he laid himself open to impeachment through proof of conviction of a prior felony. The deputy district attorney asked him, ''Have you previously been convicted of a felony, Mr. Harris?'' He answered, ''Yes, I have.'' The prosecutor then said, ''And where was this?'' The witness answered, ''In Los Angeles in 1951.'' When asked, ''And what was the nature of it?'' the appellant answered, ''Grand theft auto.'' No further questions were asked. But, misapprehending the holding in the case of *People* v. *Coffey,* 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], the appellant claims that the People had the burden of proving

that the defendant had an attorney at the time of his prior conviction or that he had then waived his right to an attorney. However, at the time of the impeachment, there was no objection by the appellant to the questions asked by the deputy district attorney, and there was no allegation of any kind in the record to the effect that appellant was not represented by counsel at the time of the prior conviction. *In the Coffey* case, *supra,* at the trial there had been a challenge as to the sufficiency of proof of the prior conviction. In the instant case, no allegation raising the point was made. And, as held in *People* v. *Merriam,* 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161], there is no right to raise such a point for the first time on appeal. The function of an appellate court is limited to a consideration of matters in the record of the trial; other claims cannot be considered (*People* v. *Hernandez,* 150 Cal. App.2d 398 [309 P.2d 969] ; *People* v. *Merriam, supra,* 66 Cal.2d 390).

THE APPELLANT FINALLY ARGUES THAT THE EVIDENCE SHOWS A WAIVER ON THE PART OF THE WESTERN STATES MONEY ORDERS, INC. OF THE PROVISIONS OF THE AGENCY AGREEMENT.

 The trial judge was right when he said: ". . . the Court feels that once the crime is committed there can be no waiver by a private party. And under the terms of the agency agreement the crime was committed the instant that there was any defalcation of funds and the use of the funds to the private use of Mr. Harris. And any subsequent arrangements between the parties would be in the nature of restitution, or any other agreements would be inconsequential from the standpoint of the guilt of the defendant, since the crime is committed against the People of the State of California and not against the victim per se."

Section 12301.2 of the Financial Code states that a money order sold by a licensee should be drawn on an account of the licensee maintained at a bank authorized to do business in California. When Harris used the money orders entrusted to him as agent, appellant in effect was using the money for his own objects that Western States Money Orders, Inc. had deposited in its account, as required by Financial Code section 12301.2. The immediate breach of trust constituted the offense of embezzlement (*People* v. *Talbot,* 220 Cal. 3 [28 P.2d 1057]). Harris committed the crime of embezzlement at the very instant he used a money order for his own purposes. It is

clear that the statement of the trial court is supported by the authorities.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.