[Crim. No. 8957. First Dist., Div. One. May 10, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY L. PENA, Defendant and Appellant.

## COUNSEL

Howard M. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and Louise H. Renne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment entered following a jury verdict of guilty of violating Penal Code section 4500 (assault with a deadly weapon by life prisoner). He seeks reversal on two grounds: (1) He was denied effective assistance of counsel at the trial, and (2) the trial judge was guilty of prejudicial misconduct. Defendant has also moved for an order for leave to produce additional evidence on appeal. We reserved ruling on this motion until such time as we were prepared to consider defendant's appeal on its merits.[1]

### Additional Evidence on Appeal

We consider, first, the motion to produce additional evidence. Defendant requests that we admit into evidence several documents. The first is an affidavit prepared by defendant's trial counsel in which it is asserted that the trial counsel's failure to object to the fact that defendant and his witnesses were shackled and handcuffed during the trial was due to his ignorance of the pertinent law. The second and third are unsworn statements of two alleged eyewitnesses in which it is asserted that defendant was acting in self-defense. Defendant also requests that testimony be taken before a referee as to the lack of necessity for shackling defendant and his witnesses during the trial and as to the ineffectiveness of the assistance provided by defendant's trial counsel.

---

[1]Defendant was represented at trial by a deputy public defender. He has different counsel on appeal.

■ The first issue raised by the motion is whether rule 23(b) of the California Rules of Court may be invoked in a criminal appeal where the trial was by jury. This rule provides that the reviewing court may grant or deny, in whole or in part, an application for the production of additional evidence on appeal subject to such conditions as it may deem proper, and that if it is granted, the court may order that the evidence be taken before the court or a justice thereof, or before a referee appointed for that purpose. This rule is based on the power given to this court by Code of Civil Procedure section 909[2] (formerly § 956a) which provides, in pertinent part, that: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make findings of fact contrary to or in addition to those made by the trial court. . . . The reviewing court may for the purpose of making such findings of fact or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, . . ." Section 909, in turn, finds its genesis in article VI, section 11, of the California Constitution which provides that "The Legislature may permit appellate courts to take evidence and make findings of fact when jury trial is waived or not a matter of right."

Although there is authority to the effect that section 909 does not apply to criminal cases (*People* v. *Cowan,* 38 Cal.App.2d 144, 153 [100 P.2d 1079]; *People* v. *Valenzuela,* 259 Cal.App.2d 826, 834 [66 Cal.Rptr. 825]), there is also authority which indicates that the statute applies to a criminal case where a jury is waived, but that it does not apply in such a case where the trial is by jury. (*People* v. *Mendes,* 35 Cal.2d 537, 546 [219 P.2d 1]; *People* v. *Carmen,* 43 Cal.2d 342, 349 [273 P.2d 521]; *People* v. *Edgmon,* 267 Cal.App.2d 759, 770, fn. 9 [73 Cal.Rptr. 634]; see *People* v. *Benford,* 53 Cal.2d 1, 7 [345 P.2d 928]; *People* v. *Merriam,* 66 Cal.2d 390, 397, fn. 6 [58 Cal.Rptr. 1, 426 P.2d 161].) We are satisfied from a reading of the last cited cases and from the plain language of section 909 that the statute is inapplicable in a criminal case where, as here, a jury trial has not been waived.

We observe, in any event, that the unsworn statements of the two alleged eyewitnesses that defendant was acting in self-defense clearly do not come within the purview of section 909 and rule 23(b). The evidence-taking and fact-finding powers of the appellate courts do not convert them into triers of fact or abrogate the general rule that findings of the trial court based on substantial evidence are conclusive on appeal. (*People* v.

---

[2]Unless otherwise indicated, all statutory references hereinafter made are to the Code of Civil Procedure.

*Benford, supra,* 53 Cal.2d 1, 6.) ■ The purpose of the statute and the rule implementing it "is to enable appellate courts, in appropriate cases, to terminate litigation by affirmance, or modification and affirmance, of the judgment, or by reversal with directions to enter judgment for appellant if it appears that on no reasonable theory could respondent make a further showing in the trial court. [Citations.]" *(People* v. *Benford, supra.)* They do not warrant an appellate court's general reversal of a judgment on the basis of newly discovered evidence presented in the appellate court. *(People* v. *Benford, supra,* at pp. 6-7; *Estate of Schluttig,* 36 Cal.2d 416, 423 [224 P.2d 695].) Here the testimony of the witnesses which defendant wishes to produce on appeal creates a conflict with that produced at the trial. We cannot weigh that testimony with the testimony which is transcribed in the record and conclude that as a matter of law defendant was acting in self-defense.

Defendant, apparently conceding that the subject statute and rule do not apply in a criminal case where a jury trial has not been waived, argues that this case is distinguishable insofar as the production of additional evidence on the issue of effectiveness of counsel is concerned because that issue is not a jury question. We agree that the determination whether a defendant has been deprived of the effective assistance of counsel under the applicable principles is not a jury question but a question of law. However, in order to make a finding that there was ineffective representation there must be a showing that counsel's lack of diligence or competence reduced the trial to a " 'farce or a sham.' " *(People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Hill,* 70 Cal.2d 678, 689 [76 Cal.Rptr. 225, 452 P.2d 329].)

■ Although the best criterion of the competency, care and alertness of the attorney referred to is said to be the record of the case *(People* v. *Ives,* 17 Cal.2d 459, 477 [110 P.2d 408]; *People* v. *Honea,* 257 Cal.App. 2d 259, 263 [64 Cal.Rptr. 628]), we recognize that the factual basis for the claim of incompetency may exist dehors the record. (See *In re Hochberg,* 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1].) The latter circumstance does not require, however, that the basis for the claim of ineffective representation be established through the vehicle of producing additional evidence before the appellate court pursuant to section 909 and rule 23(b) to establish the matter which is dehors the record. To insist on proceeding in that manner does not only do violence to the provisions of the statute and the rule which specifically make them inapplicable in cases where a jury trial has been had, but also does violence to the elementary principle that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to matters contained in the record of the trial pro-

ceedings. (See *In re Hochberg, supra; People* v. *Merriam, supra,* 66 Cal.2d 390, 396-397; *People* v. *Edgmon, supra,* 267 Cal.App.2d 759, 770.)

■ A defendant with a legitimate complaint as to the quality of representation by his trial counsel, where the basis for such complaint is not presented by the record, is afforded an adequate procedural remedy by way of reasonable collateral attack in a court of competent jurisdiction. (*People* v. *Edgmon, supra,* 267 Cal.App.2d 759, 770; *In re Hochberg, supra,* 2 Cal.3d 870, 875; see *In re Williams,* 1 Cal.3d 168, 170-171 [81 Cal.Rptr. 784, 460 P.2d 984].) In *Hochberg,* the Supreme Court, speaking of the constitutional right of effective trial counsel, makes the following significant statement: ". . . although habeas corpus cannot serve as a second appeal, 'denial of the right to counsel is one trial error which has always been cognizable on habeas corpus' [citation] whether or not it was raised on appeal. [Citations.]" (At p. 875.) ■ Accordingly, in a petition for habeas corpus based upon an allegation of denial of effective representation by trial counsel where such issue is disputed, appellate courts, because they are not designed and equipped to conduct testimonial hearings on disputed issues of fact, follow the practice of appointing a referee to take evidence to make findings concerning the representation afforded the petitioner. (*In re Hochberg, supra,* at p. 873, fn. 2; *In re Williams, supra.*) This is the appropriate remedy and procedure where the success of the claim of the denial of effective representation by trial counsel depends upon matters which are extrinsic to the record.

■ Defendant urges that we may grant relief by way of habeas corpus in aid of our appellate jurisdiction. No authority is cited for this proposition. ■ Habeas corpus, although granted to inquire into the legality of one imprisoned in a criminal prosecution, is not a proceeding in that prosecution but an independent action instituted by the petitioner to secure his discharge from imprisonment or restraint. (*France* v. *Superior Court,* 201 Cal. 122, 126-127 [255 P. 815, 52 A.L.R. 869].) Habeas corpus cannot serve as a substitute for appeal (*In re Dixon,* 41 Cal.2d 756, 759 [264 P.2d 513]; *In re Shipp,* 62 Cal.2d 547, 552 [43 Cal.Rptr. 3, 399 P.2d 571]), but it may be available where appeal presents an alternative method of obtaining review, but does not constitute a plain, speedy and adequate remedy. (*In re Solis,* 274 Cal.App.2d 344, 347-348 [78 Cal.Rptr. 919]; see *In re Bine,* 47 Cal.2d 814, 817-818 [306 P.2d 445]; *In re Osslo,* 51 Cal.2d 371, 376-377 [334 P.2d 1].) We observe, moreover, that in a proper case the reviewing court may consider a petition for habeas corpus in conjunction or along with an appeal. (See *In re Rinegold,* 13 Cal.App.3d 723, 725, fn. 1 [92 Cal.Rptr. 18].) ■ But here no separate petition for a writ of habeas corpus has been filed; rather an attempt has been made to utilize

the appellate process to attain relief which, if it is warranted, is properly achieved by collateral attack.

Defendant's motion for an order for relief to produce additional evidence must be denied and the contentions raised by him upon this appeal must be considered solely in the light of the record before the court.

## Ineffective Assistance of Counsel

Defendant's primary contention on appeal is that he was denied the effective assistance of counsel. The basis for this contention is trial counsel's failure to object to the shackling of defendant and his witnesses, his failure to object to alleged prejudicial preinstructions, his acquiescence to the court's characterization of the case as one involving direct evidence, and his failure to call as witnesses for the defense two additional alleged eye-witnesses.

■ To justify relief on the basis of this attack it must appear that counsel's lack of diligence or competence reduced the trial or proceeding to a " 'farce or a sham.' " (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 464; *People* v. *Hill, supra,* 70 Cal.2d 678, 689; *People* v. *Vatelli,* 15 Cal.App.3d 54, 62 [92 Cal.Rptr. 763].) The burden of sustaining the allegation of inadequate representation rests upon the defendant who must establish the allegation not as a matter of speculation but as a demonstrable reality. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Hill, supra,* at pp. 688-689.) "It is not enough, however, that the defendant alleges omissions of counsel indicating lack of preparation and general incompetence, but he must show that such acts and omissions resulted in a withdrawal of a right crucial" to the conduct of the trial or the rendering of the judgment. (*People* v. *Vatelli, supra,* at p. 62; *People* v. *Hill, supra,* at p. 689; see *People* v. *Shells,* 4 Cal.3d 626, 630 [94 Cal.Rptr. 275, 483 P.2d 1227].)

■ Penal Code section 688 provides, in relevant part, that "No person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge." It is a violation of these provisions and the common law to require that a prisoner during the progress of a trial appear and remain with chains and shackles on his limbs in the absence of evident necessity for such restraint. (*People* v. *Harrington,* 42 Cal. 165, 168-169; *People* v. *Ray,* 252 Cal.App. 2d 932, 973 [61 Cal.Rptr. 1].) Accordingly, where such restraints are necessary to assure a prisoner's detention or to maintain order in the courtroom, he may be required to undergo reasonable restraints. (*People* v. *Chacon,* 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454];

*People* v. *Kimball,* 5 Cal.2d 608, 611 [55 P.2d 483]; *People* v. *Burnett,* 251 Cal.App.2d 651, 655 [59 Cal.Rptr. 652].)

In the case presently before the court, defendant, defendant's two witnesses, and one of the People's witnesses were handcuffed and had shackles around their waists throughout the two-day trial. The witnesses were held in police custody outside the courtroom until they were called to testify. Apparently, on the first day of trial defendant was allowed to have his right hand free; however, this was not possible on the second day because the bailiff did not have the proper key. Defendant was serving a sentence pursuant to a conviction of first degree robbery and was being tried for assault. Defendant's witness Philip Segura was serving a sentence for second degree murder, and defendant's witness Philip Medina was serving a sentence for burglary and had previously been convicted of armed robbery. The People's witness Keith Johnston was serving a sentence for second degree burglary, and had also been previously convicted of burglary.

The record discloses that at no time did defendant's trial counsel make an objection to the restraints which were placed on defendant and his witnesses during the course of the trial. Apparently he did not think them improper. His only objection was made on the second and final day of the trial and was directed to the fact that defendant's right hand was not free as it had been on the first day. At that time the bailiff indicated to the court that the reason defendant's right arm was not free was that different handcuffs had been put on defendant and the bailiff did not have the key for them. At that time the court, in its colloquy with defendant's counsel made known to him its reasons for shackling defendant and the witnesses. Essentially the court indicated that the restraints were necessary to insure the prisoners' detention and that the restraints were warranted by the background of the prisoners, the charge against defendant and the court's previous experience with prisoners from the state prison.[3]

 As observed in *People* v. *Morris,* 20 Cal.App.3d 659, 666 [97 Cal.Rptr. 817], ". . . the vagaries of each individual case, the variation in

---

[3]The court made the following observation: "I have had in the courtroom through the years, because we have a State Prison here in the County, I have had chained prisoners stab my bailiff, I have had them kick my bailiff in the head, I have had them spit in his face. These are men in chains that have done these things. There are cases that have—in the books that expressly state that a person can be in chains for security reasons, depending upon the person's background. If he had a bad check artist with *no* assaultive background that would be different. Here we have a man that is alleged to have assaulted another inmate with a dagger. I have to consider not only him but the safety of persons around him and your safety and everyone else. I often times expressly state to the jury that the presence of handcuffs or chains is not to be regarded in any way from a prejudicial standpoint, it's not an issue involved in the case."

security facilities in different jurisdictions, the conduct and attitude of a defendant and/or his counsel, and a myriad of other factors all play a part in the decision of the trial judge as to what action must be taken with respect to restraints upon the defendant. The trial judge is in the very best position to make that judgment." Reviewing courts "should adhere to the basic presumption that the trial judge has faithfully performed his duty until and unless the defendant shows without equivocation that there was no basis whatever for the restraint employed." (*People* v. *Morris, supra,* at p. 666.) In the present case defendant has not made such a showing.

We note that although "emphasis has been placed by judicial dicta, law review writers, and journalistic commentators on the alleged psychological impact of courtroom atmosphere upon the minds of jurors" (*People* v. *Morris, supra,* 20 Cal.App.3d 659, 665), the real basis upon which the courts have frowned upon the use of manacles and chains upon a defendant during his trial is the tendency of such action to deprive the defendant of a substantial legal right. (*People* v. *Harrington, supra,* 42 Cal. 165, 167.)

 In *Harrington,* the first California case to consider the question and the cases upon which subsequent cases in this state have relied, it was rationalized that ". . . any order or action of the Court which, without evident necessity, imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense; and especially would such physical bonds and restraints in like manner impair and prejudicially affect his statutory privilege of becoming a competent witness and testifying in his own behalf." (At p. 168.) In the present case defendant and his witnesses took the stand and testified. There is nothing to indicate that they did not testify freely or that their mental faculties were in any way impaired. Their testimony was clear and uninhibited. Defendant and each of his witnesses testified emphatically to the effect that defendant acted in self-defense.

Defendant and each of his witnesses testified on direct examination that they were inmates of Soledad State Prison. The jurors knew both from the nature of the charge and the testimony that defendant and his witnesses were inmates of a state prison, and they were aware of the crimes for which they had been convicted. Accordingly, the jurors did not gain the information that defendant and the witnesses were in custody from the fact that they were shackled, but this information would have been conveyed to them even if the prisoners were not shackled. (See *People* v. *Ross,* 67 Cal.2d 64, 72 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Morris, supra,* 20 Cal.App.

3d 659, 665.) We note also that the People's key witness was similarly restrained. ■ Finally, we observe that the trial court specifically instructed the jury that they were to disregard the fact that defendant and the witnesses were chained and that this circumstance was not to enter into their deliberations.[4] We are entitled to assume, in the absence of a contrary showing by defendant, that the admonition was efficacious. (*People* v. *Morris, supra,* at pp. 665-666; *People* v. *Burnett, supra,* 251 Cal.App.2d 651, 655.)

■ Defendant asserts that trial counsel's failure to object to the shackling was due to his ignorance of relevant law. The correctness of this contention cannot be ascertained from the record before us. It is reasonable to assume that, in view of the trial judge's statements as to his reason for shackling the prisoners, counsel may well have concluded that any further objection would have been futile. Assuming, arguendo, that counsel was ignorant of relevant law with respect to restraints upon a defendant and his witnesses, it does not follow that defendant was denied his right to effective counsel. Defendant must show that the omissions of his counsel have resulted in the withdrawal of a right crucial to the conduct of his trial. (*People* v. *Vatelli, supra,* 15 Cal.App.3d 54, 62; *People* v. *Hill, supra,* 70 Cal.2d 678, 689; *People* v. *Shells, supra,* 4 Cal.3d 626, 630.) Defendant not only has failed to show that the restraints imposed were unreasonable, but he has also failed to demonstrate that his counsel's failure to object to such restraints deprived him of a right crucial to the conduct of his trial.

Defendant next contends that he was denied his right to effective assistance of counsel because of his counsel's failure to object to prejudicial preinstructions, i.e., instructions at the beginning of the trial prior to the prosecutor's opening statement and the taking of any testimony. (Pen. Code, § 1093, subd. 6.)[5] Defendant alleges that the preinstructions were prejudicial in that there were no defensive instructions given, the instruction on

---

[4]The trial judge admonished the jury as follows: ". . . during the course of this trial the defendant, Mr. Pena, has had handcuffs on and the shackles around the waist area and the jury is not to consider this in any way in the course of its deliberations, it's not to have any prejudice or effect [*sic*] you in any way upon your deliberations. Your only deliberations are whether he's guilty or not guilty of the offense charged, whether shackled or unshackled or any of the lesser included offenses so you are not to talk about this, this is not to enter into your deliberations at all whether he's handcuffed. . . . the same applies to anybody who might have testified here in court."

[5]Penal Code section 1093, subdivision 6, provides in relevant part: "At the beginning of the trial or from time to time during the trial, and without any request from either party, the trial judge may give the jury such instructions on the law applicable to the case as he may deem necessary for their guidance on hearing the case."

present ability for assault was erroneous, the instruction on the testimony of a witness who faults had the effect of applying only to defendant, and the preinstructions placed undue emphasis upon how little was required for conviction.

A review of the record discloses that there is no merit to defendant's contention that the preinstructions were prejudicial.

■■■ Defendant's allegation that no defensive preinstructions were given is not supported by the record. The court effectively preinstructed the jury on the People's obligation to prove defendant guilty beyond a reasonable doubt. It is difficult to surmise what other defensive preinstructions the court could have given without knowing what defense defendant would assert in the trial.

■■■ Defendant, conceding the correctness of the final instruction given with respect to present ability as an element of the crime of assault, urges that the preinstruction given in regard to such present ability was erroneous and that the inconsistency between the two instructions confused the jury.[6] In its preinstruction the court correctly stated the principle declared in Penal Code section 240 that "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (See *People* v. *Mosqueda,* 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346].) However, the court went on to instruct the jury that "the law does not require . . . the physical means to accomplish such an injury . . . ." This statement was erroneous. It is difficult to conceive how an assault can have the present ability to commit a violent injury upon the person of another without the physical means to accomplish such injury. (See CALJIC No. 9.08; 1 Witkin, Cal. Crimes (1963) § 257, p. 243.) In any event, in its final instructions to the jury prior to its deliberations, the court did give a correct and clear instruction on present ability. We observe, particularly, that at the time the court gave its preinstructions it admonished the jury as follows: "I'll give you more detailed instructions at the end of the trial and, of course, they'll be completely governing if there should be any possible

---

[6]The preinstruction given was as follows: "In providing that a necessary element of assault be the assailant have the present ability to commit a violent injury upon the person of another, the law does not require that at the time of the attempt he had the physical means to accomplish such an injury in the manner by which it is attempted if he then possesses such ability, the existence of that element of the crime is not cancelled or erased by the fact, if it be a fact, that the attempt to commit the injury fails through some cause other than a present lack of ability on his part. For instance a child of two years of age would not have the present ability to take up a tweny pound piece of iron and strike a person with it but a weight lifter would or some normally strong man. This in a general way refers to present ability to commit an injury."

inconsistency between what I say in giving you the preinstructions and the final instructions at the end of the trial, the ones I give at the end of the trial will govern." Under the circumstances the jury was clearly aware that if there was any inconsistency between the preinstructions and the final instructions the latter would govern. We do not perceive, therefore, that the jury had any misconception of the law of present ability as it applies to an assault. (See *People* v. *Honeycutt,* 29 Cal.2d 52, 61-62 [172 P.2d 698].)

 Defendant alleges that the court's preinstruction concerning a witness who faults in one part of his testimony is to be distrusted in others was never requested by either counsel and had the effect of applying only to defendant's witnesses to his prejudice. Under Penal Code section 1093, subdivision 6, the trial judge was empowered to give this instruction as a preinstruction. It is a correct statement of the law which was applicable to any witness, and was not restricted to defendant and his witnesses. (See *People* v. *Kennedy,* 21 Cal.App.2d 185, 201 [69 P.2d 224]; Witkin, Cal. Evidence (2d ed. 1966) § 1124, p. 1040.) Accordingly, no prejudice may be claimed.

 Defendant next alleges that the pretrial instructions were prejudicial because they placed undue emphasis upon how little was required to convict defendant. The criticized instructions merely served to delineate the crime with which defendant was charged. Since they correctly stated the law and more complete final instructions were given, defendant cannot claim any prejudice.

 Defendant contends that he was denied his right to effective assistance of counsel because his counsel acquiesced in the court's characterization of the case as one involving direct evidence and thus deprived defendant of a crucial defense, namely, an instruction as to circumstantial evidence. As the case was one primarily involving direct evidence this contention is without merit.

"It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to, and corroborative of direct evidence. [Citations.]" (*People* v. *Malbrough,* 55 Cal.2d 249, 250-251 [10 Cal.Rptr. 632, 359 P.2d 30].) In the instant case, any evidence submitted by the People, which warrants a characterization as circumstantial, was merely incidental to, and corroborative of the direct evidence. The case against defendant was based primarily on direct evidence, i.e., on the testimony of Keith Johnston that he was assaulted by a man who appeared to be defend-

ant, and that of a correctional officer that he observed defendant standing over Johnston, trying to stab him.

Defendant also contends that he was denied his right to effective assistance of counsel by his trial counsel's failure to call two additional alleged eyewitnesses. Defendant argues that the three witnesses who were called on his behalf were all impeached for prior inconsistent statements,[7] and the failure to call the additional witnesses weakened a crucial defense of fact at the trial.

Counsel has a duty to make careful factual inquiries with a view to developing a defense in order that he may make informed judgments on behalf of his client. If a counsel's failure to conduct such an investigation results in the withdrawal of a crucial defense, the client has not had the effective assistance of counsel to which he is entitled. (*People* v. *Shells, supra,* 4 Cal.3d 626, 630.)

The record discloses that defendant's trial counsel called two inmate witnesses to the stand to testify on behalf of defendant. It also discloses that defendant's counsel was aware that there were other witnesses and that he represented to the court that he might call one of these witnesses after defendant testified "depending on circumstances." The two witnesses, who it is now asserted should have been called as witnesses, were also prison inmates. There is no showing that counsel did not know of these witnesses or that he had not interviewed them or investigated the nature of any testimony they might give. In counsel's judgment these witnesses may have been undesirable witnesses not only because they were fellow inmates but also because they might have been subject to the same impeachment it is now claimed was suffered by the inmates who did testify. An attorney is not required to interview all witnesses, particularly a witness who is prima facie undesirable. (*People* v. *Floyd,* 1 Cal.3d 694, 710 [83 Cal.Rptr. 608, 464 P.2d 64].)

"To sustain a claim of inadequate representation by reason of failure to call a witness, there must be a showing from which it can be determined whether the testimony of the alleged additional defense witness was material, necessary, or admissible, or that defense counsel did not exercise proper judgment in failing to call him. [Citation.]" (*People* v. *Hill, supra,* 70 Cal.2d 678, 690.) Even if it is assumed that the testimony of the two additional alleged eyewitnesses was material, necessary, or admissible, defendant's contention must fail because he has not shown that his trial

[7]It is not clear from the record that witness Segura was impeached by prior inconsistent statements.

counsel used improper judgment. As observed in *Floyd*, ". . . the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics. [¶] . . . However, the choice of which, and how many, of potential witnesses is precisely the type of choice which should not be subject to review by an appellate court." (1 Cal.3d at p. 709.) "Except in rare cases an appellate court should not attempt to second-guess trial counsel." (*People* v. *Brooks*, 64 Cal. 2d 130, 140 [48 Cal. Rptr. 879, 410 P.2d 383].)

We conclude, therefore, that defendant has not sustained his burden of establishing inadequate representation as a matter of demonstrable reality, nor is there any indication in the record that defendant's trial was reduced to a farce or a sham by reason of any conduct or omission on the part of his trial counsel.

## *Misconduct of Judge*

Defendant contends that the trial judge was guilty of prejudicial misconduct in that he gave prejudicial preinstructions, mischaracterized the case as one based primarily upon direct evidence, and prompted a crucial prosecution witness. We have already disposed of the first two of these assertions in our discussion with respect to the claim of inadequate representation and have found them to be unmeritorious.

 The charge that the trial judge was guilty of prejudicial misconduct because of prompting a witness is based upon the following questioning of Johnston, the key prosecution witness, by the deputy district attorney: "Q. Did you see who wielded the knife? A. I can't really say clearly that I can—that I know who it was. Q. Well, did you ever get a look at the other person? A. I'd say maybe a quick glimpse, I couldn't be sure, though. Q. Do you see that person here in court today that you got a quick glimpse of? A. I wouldn't like to say for sure because I can't be sure. . . ." The trial judge then interrupted the examination, stating "You don't have to be absolutely positive in identification, you can have a recollection. Go ahead."[8]

---

[8]The following examination by counsel then ensued: "MR. ANTHONY [deputy district attorney]: Q. Do you see someone who appears to look like the person that wielded the knife on you on October 27, 1969? MR. DICE [defense counsel]: I object to the question, Your Honor, I think it's been asked and answered. The witness has stated he's not sure. THE COURT: Objection overruled. You can answer. THE WITNESS: Yes, Sir. MR. ANTHONY: Q. And who is that person? A. I'm not sure of his name. Q. Will you point to him, please. A. There (indicating). MR. ANTHONY: I don't believe Your Honor can see it because you can't raise your hand. THE COURT: He's pointing to the defendant."

In *People* v. *Rodriguez,* 10 Cal.App.3d 18, 32 [88 Cal.Rptr. 789], we synthesized the rules applicable to the examination of a witness by a judge as follows: "A judge may examine a witness [citations] in order to establish the truth according to the rules of evidence [citation], or to clarify unclear testimony. [Citations.] He may not, however, become an advocate for either party. [Citations.]" In the present case there is no indication that by his questioning the trial judge was purporting to become an advocate for the People. Rather, the record suggests that he was reiterating a basic principle dealing with the identity of a person, i.e., that the identification need not be made in positive terms. A witness may testify that in his belief, opinion, or judgment the accused is the person who perpetrated the crime; the want of positiveness goes only to the weight of the testimony. (*People* v. *Harris,* 87 Cal.App.2d 818, 824 [198 P.2d 60]; *People* v. *Waller,* 14 Cal.2d 693, 700 [96 P.2d 344]; *People* v. *Abner,* 209 Cal.App. 2d 484, 491 [25 Cal.Rptr. 882]; see Evid. Code, § 800.)

The motion for leave to produce additional evidence is denied. The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 19, 1972.