[Crim. No. 15774. Second Dist., Div. Four. Feb. 18, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JOSEPH O'TREMBA, Defendant and Appellant.

## COUNSEL

Gerson Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Lawrence K. Keethe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FILES, P. J.**—Defendant was charged with committing a lewd and lascivious act upon a child under the age of 14 years in violation of section 288 of the Penal Code. He was found guilty by a jury, placed in Atascadero State Hospital for 90 days' observation as a probable mentally disordered sex offender and then brought back to the court, which, after reviewing the superintendent's report, elected to resume criminal proceedings. The defendant was then sentenced to state prison for the term prescribed by law. He appeals from the judgment.

The defendant contends the trial court erred, to his prejudice, in that (1) it failed to instruct the jury properly on the effect which mental disorder might have upon the crime with which he was charged, and (2) it refused to receive in evidence hospital records of the defendant's treatment in a veterans hospital two and one half months prior to the date of the crime charged.

There is no question of the sufficiency of the evidence. The victim was the 3-year-old granddaughter of one of defendant's friends. The offense was committed in the home of the latter after a dinner party at which defendant had been a guest.

The grandmother testified that defendant arrived at her home between 5 and 6 p.m. He brought liquor which was served to the group, after which dinner was served. After dinner, about 8:30 p.m., the grandmother took some coffee into the den to serve to defendant. As she entered she saw her granddaughter lying on her back in a chair, with defendant sitting on the floor in front of the chair. The child's panties were down to just above the knee, and defendant's face was resting in her crotch. The grandmother grabbed defendant's hair and pulled him away. Defendant said " 'Nothing happened.' " She then picked up the child and asked her "What happened?" The child replied " 'He kissed me' " and put her hand on her crotch.

Defendant testified that prior to leaving his home he had at least two drinks, "brave bulls" (consisting of tequila and kahlua), and "several" drinks of scotch with a neighbor. On his way to dinner he purchased some liquor and, after arriving for dinner, he mixed drinks for the adults present, drinking two additional brave bulls himself. During the meal he had a drink of scotch which he did not finish and took with him into the den following the meal.

Defendant testified that he became very sleepy soon after the dinner was over, that he didn't know whether he did the thing he was accused of, but "could have." He did recall something of events after he was discovered with the little girl. He considered himself an alcoholic, and he had been treated for alcoholism in a veterans hospital in September 1967. He said he had been attending "AA" meetings for about seven months prior to the offense, which occurred December 3, 1967.

The child's grandmother testified that defendant had had only two or three drinks between his arrival at 5 or 6 p.m. and 8:30, the time he was discovered with the child. She said he did not appear drunk, his speech was not slurred and he did not stagger. The child's mother testified that defendant did not appear drunk, nor did he do anything which caused her to believe he was abnormal in any way.

### The Hospital Record

Defendant offered in evidence a record of a veterans hospital where he had been a patient from September 3 to September 19, 1967. No witness appeared with the records, but it was stipulated that they were "true business records kept in the ordinary course of business." The purpose of the offer was to bring before the jury the diagnosis of staff physician Donald Gibbons, M.D., which was set forth in the hospital record as follows: "One, chronic alcoholism with acute brain syndrome, due to alcohol intoxication;

Two, Laennec's cirrhosis of the liver; and

Three, arterial hypertension."

The court said, "It is only the fact of alcoholism, that is the gist of the offer of that statement."

Counsel for defendant responded, "That is correct, your Honor."

The People objected, without stating any ground, and the court sustained the objection.

This evidence was offered in support of defendant's contention that whatever he did was only a manifestation of his drunkenness, not an act done with an intent to arouse or gratify a sexual desire. Penal Code section 288

provides: "Any person who shall wilfully and lewdly commit any lewd or lascivious act . . . upon or with the body . . . of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony. . . ."

■ In order to convict under this section proof of the stated intent is required, but in a case such as this one, the circumstances observed by the People's witness make a prima facie showing of such an intent. (See *People* v. *Jones* (1954) 42 Cal.2d 219, 222 [266 P.2d 38].) ■ Nevertheless, a defendant is entitled to offer competent evidence which would support a different interpretation of his conduct.

The diagnosis made by Dr. Gibbons at the veterans hospital did not, by itself, indicate any mental state which would exist at the time of the alleged offense. No evidence was offered to show either that a person who is suffering from any of the three conditions mentioned in the hospital record lacks capacity to have the intent referred to in section 288 or that such a person would be less likely than other persons to do the acts or have the intent which constitute the offense.

However, there was a possible relevance in proving that defendant was a chronic alcoholic. Defendant had testified that he had had a great deal to drink during the day. The People's witnesses saw him drink a lesser quantity, and testified that he showed no signs of intoxication. If it could be shown that a medical authority had diagnosed "chronic alcoholism with acute brain syndrome, due to alcohol intoxication," a jury could reasonably view this as some corroboration of defendant's testimony that he had been drinking heavily on the day in question. Without expert testimony to interpret the diagnosis, the jury could understand that the ordinary meaning of alcoholism is "addiction esp. when compulsive to excessive use of alcoholic drinks." (Websters New Internat. Dict. (3d ed. 1961).)

The cases are in conflict as to whether a hospital record may be received as evidence of a medical diagnosis which has been entered therein. *McDowd* v. *Pig'n Whistle Corp.* (1945) 26 Cal.2d 696, 700 [160 P.2d 797], contains broad language which apparently supports admissibility, and *People* v. *Gorgol* (1953) 122 Cal.App.2d 281 [265 P.2d 69] appears to be a square holding that such a record is admissible as proof of the substance of the diagnosis contained therein. *Hutton* v. *Brookside Hospital* (1963) 213 Cal.App.2d 350, 355 [28 Cal.Rptr. 774, 29 Cal.Rptr. 670], relying upon a dictum found first in *People* v. *Terrell* (1955) 138 Cal. App.2d 35, 57 [291 P.2d 155], and repeated in *People* v. *Williams* (1960) 187 Cal.App.2d 355, 364 [9 Cal.Rptr. 722], held that a recorded diagnosis

was not itself admissible because it "was a conclusion and could not be presented except by testimony subject to cross-examination."

The *Terrell, Williams* and *Hutton* cases call attention to particular reasons for not admitting a diagnosis as a part of a business record, but fail to note the apparent conflict with the earlier cases.

■ Assuming that the trial court erred in excluding the hospital record in the case at bench, the error does not justify a new trial.

The uncontradicted testimony describing defendant's conduct left little room for doubt. Defendant did not attempt to deny the physical facts. Defendant's theory of defense was supported by his own testimony that he had been drinking all day, that he was an alcoholic, that he had attended meetings of "the AA" and that he had received medical treatment for alcoholism at a veterans hospital in September 1967. This testimony was uncontradicted except for whatever inferences might be drawn from the testimony of the victim's mother and grandmother that they had seen him take only two or three drinks after 5 o'clock, he did not stagger, his speech was not slurred, and he did not appear to be drunk.

Upon this record we do not think that additional evidence, in the form of the September hospital diagnosis, would have made any difference in the verdict. There was no miscarriage of justice within the meaning of article VI, section 13, of the California Constitution.

### The Instructions

■ The court gave the following instruction: "In the crime of lewd conduct with a child of which the defendant is accused, a necessary element is the existence in the mind of the defendant of the specific intent to arouse, appeal to, or gratify the lust, passions or sexual desires of such person.

"If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent." (Exact copy of form 78-B (rev.) CALJIC, except adaptations.)

Defendant does not criticize that instruction, but contends that the court should have given the following additional instruction, which his trial counsel requested: "When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from

forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged." (Exact copy of form 73-B (rev.) CALJIC.)

The more general instruction requested by defendant was unnecessary. The only abnormal mental state suggested by this record was intoxication, and the only mental state at issue was defendant's specific intent. The instruction given adequately explained the relationship of intoxication and specific intent in this case.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Petitions for a rehearing were denied March 3 and March 6, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1970.