[Crim. No. 16988. In Bank. Apr. 8, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT KENT LANG, Defendant and Appellant.

**COUNSEL**

Gary T. Wienerman, under appointment by the Supreme Court, and David A. Folsom, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Harley D. Mayfield, Richard D. Gaske and Marc M. Seltzer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BURKE, J.** — Defendant Robert Lang appeals from a judgment of the Superior Court of San Diego County committing him to the State Department of Mental Hygiene for placement at Atascadero State Hospital as a mentally disordered sex offender. The trial court had found defendant guilty of two counts of committing lewd and lascivious acts upon a child under 14 years of age (Pen. Code, § 288), following a trial by the court. We have concluded that defendant was deprived of his right to the effective assistance of counsel on appeal, by reason of his former appellate counsel's failure to raise certain contentions of arguable merit during the pendency of the appeal before the Court of Appeal. Accordingly, pursuant to our practice in prior cases, we order that this cause be returned to the Court of Appeal with instructions to reinstate the appeal and to appoint counsel for appellant for purposes of rebriefing and rearguing the appeal.

Defendant's commitment followed a court trial during which the following evidence was introduced: On March 12, 1971, several of defendant's friends and relatives held a surprise birthday party at defendant's house and in his honor. The party involved approximately fourteen adults and seven children, including defendant's wife, two daughters, step-daughter and son-in-law. Defendant and several other adults consumed varying quantities of alcoholic beverages; some witnesses testified that defendant and others were intoxicated during the party.

Defendant arrived at the party at about 7 p.m. He remained seated in his reclining chair in the living room during the events in question, in full view of various party-goers at all times. According to Leslie R., a nine-year-old prosecuting witness, at one point during the party she walked from the bedroom, where she was playing with the other children, to go to the kitchen to get a soft drink. On her return, defendant reached out from his chair, "blocked" her way, picked her up and placed her on his lap. Then, according to Leslie, defendant "put his hand in my vagina," and rubbed inside and out. The act in question assertedly lasted for five minutes and took place with about twelve adults in the room. Leslie stated that she tried to "get away" from defendant while the alleged act occurred.

Leslie's twin sister, Debbie, gave a nearly identical account that *she* had been molested by defendant at the same party. She was returning from the kitchen to the bedroom with a soft drink and defendant "blocked" her way and, according to Debbie, "put his hand in my vagina," and felt inside. She testified that she was on defendant's lap for about three minutes and that there were six or seven persons in the room at the time. She also tried to "get away" from defendant.

After the alleged molestations took place, the twins each returned to the bedroom where they continued to play with the other children until the party broke up. The twins did not report the incident to anyone until, several weeks later, their mother overheard them conversing and, after hearing their story, called the police.

Seven adult witnesses, including persons who claimed to have been in the same room with defendant during the entire party, testified that they had not seen either Leslie or Debbie on defendant's lap. One witness, Mrs. Raab (a nondrinker), testified that the only child to enter the living room area was her own daughter, Dorothy, who sat on defendant's lap for a few, evidently uneventful, minutes. None of the witnesses corroborated the twins' testimony. Defendant took the stand, and denied that he had molested the twins, that they had sat on his lap, or even that he knew they were at the party that night.

The trial judge, prior to announcing his findings, reviewed the foregoing evidence and noted that the twins had testified in "clear and precise terms" regarding their molestation by defendant. The judge believed that the twins' testimony was not "really shaken" by other witnesses, although the judge confessed that he did not know how "bright" the girls were or what their "capacity for fantasy" was. The judge likewise admitted that the alleged crime occurred in "incredible" circumstances, at a party amid dozens of people "milling around."

Nevertheless, the judge observed that much drinking had occurred and that several witnesses had failed to observe Dorothy Raab on defendant's lap, even though defendant and Mrs. Raab remembered that incident. Moreover, the judge was "not impressed" with defendant as a witness. The judge concluded that "In viewing all the evidence, I can't find—I can't find that reasonable doubt that is necessary to find the defendant not guilty, and I must therefore find him guilty of this charge."

Subsequently, after conviction, the trial court adjourned the proceedings and referred defendant to the psychiatric department of the superior court to determine whether he was a mentally disordered sex offender (see Welf. & Inst. Code, § 6302, subd. (c)). Following a hearing, the court found defendant to be a MDSO and ordered him committed to Atascadero.

On appeal to the Court of Appeal, defendant's former appellate counsel waived oral argument and submitted the case on the briefs. He prepared a three-and-one-half-page opening brief which was directed solely to the propriety of defendant's commitment as a MDSO, and was devoid of argument for reversal of defendant's conviction. In the statement of facts, counsel noted that, "as might be expected" there were substantial conflicts in the testimony regarding what took place at the party. Then counsel stated that "Appellant vigorously contends that he was innocent and that the testimony of the two victims was so incredible that the finding of guilt must be reversed as impossible . . . [citation]. [¶] *While I am not in agreement with this contention,* I must confess that there have been times when the Appellate Courts have held that I am not infallible, and for this reason, as well as for the reason that it is my belief that Appellant should be entitled to have his contentions heard, I am attaching an Appendix to this brief containing Appellant's own arguments in his own words." (Italics added.)

Attached to the opening brief were ungrammatical, unpolished notes written by defendant and addressed primarily to the question of the substantiality of the evidence against him. Despite the fact that the People filed a brief which considered the issue at some length, counsel's reply brief failed to discuss the point. The Court of Appeal disposed of defendant's argument on this issue in a single paragraph.[1]

---

[1]The Court of Appeal did, however, accept counsel's contention that defendant's subsequent commitment as a MDSO was invalid for failure to follow the proper procedures and, accordingly, vacated the order of commitment with instructions to hold new commitment proceedings. We do not reach the question, since we have concluded that defendant is entitled to a new appeal on the merits of his conviction and commitment.

■ We have recently set forth in detail the obligations of appellate counsel, including the duty to prepare a legal brief containing citations to the transcript and appropriate authority, and setting forth all arguable issues, and the further duty not to argue the case against his client. (*In re Smith,* 3 Cal.3d. 192, 197 [90 Cal.Rptr. 1, 474 P.2d 969]; *People v. Feggans,* 67 Cal.2d 444, 447-448 [62 Cal.Rptr. 419, 432 P.2d 21].)
■ In the instant case, appellate counsel breached both duties. He not only failed to argue the insubstantiality of the evidence but affirmatively stated his belief that the point lacked merit. Such a concession could have had a devastating effect upon defendant's chances of a successful appeal, especially when coupled with counsel's waiver of oral argument.

In the *Smith* and *Feggans* cases, *supra,* as well as in *People v. Rhoden,* 6 Cal.3d 519, 523-529 [99 Cal.Rptr. 751, 492 P.2d 1143], we catalogued the various contentions which appellate counsel failed to raise, "not to imply how the merits of the appeal should have been resolved but to emphasize the gross deficiencies in counsel's presentation." (*Rhoden,* at p. 529.) We noted that "Petitioner need not establish that he was entitled to reversal in order to show prejudice in the denial of counsel." (*Id.* at p. 524.)

As in those cases, the instant appeal presented issues of arguable merit which, though not necessarily decisive, certainly merited careful presentation by appellate counsel. First of all, counsel should have paid more attention to his client's urging that the evidence of his guilt was insubstantial. Although the issue has not yet been properly briefed, it seems apparent that a strong argument could have been made that the twins' testimony was inherently improbable and insubstantial. Each child, using almost identical words, told of unsuccessfully resisting separate but identical assaults by defendant in the presence of from six to twelve persons, none of whom saw either assault. As noted above, even the trial court described the alleged event as "incredible." The prosecution offered no corroborating testimony whatever; neither twin witnessed or even mentioned the other's molestation, and no medical testimony was introduced to establish the possibility of such assault.

A properly briefed argument, emphasizing the foregoing circumstances with references to the transcript testimony, might well have led the Court of Appeal to conclude that the alleged assaults were physically impossible, and that the twins' testimony was demonstrably false. (See *People v. Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People v. Headlee,* 18 Cal.2d 266, 267-268 [115 P.2d 427], regarding the rules for determining inherent improbability of testimony.) ■ As we have often stated, "in determin-

ing whether the record is sufficient . . . [to support a criminal conviction] the appellate court can give credit only to 'substantial' evidence, i.e., evidence that reasonably inspires confidence and is 'of solid value.' " (*In re Roderick P.,* 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1].)

To strengthen defendant's attack on the substantiality of the evidence against him, appellate counsel, on the basis of certain remarks by the trial judge, might have contended that the judge misapplied the presumption of innocence and, in effect, placed the burden of proof on defendant to establish his innocence. As noted above, the trial judge with some reluctance found defendant guilty because the judge could not find "reasonable doubt that is necessary to find him not guilty . . . ." This remark seems to imply that in order to acquit a defendant in a criminal case, the burden is on the defendant to show reasonable doubt of his guilt, rather than on the People to show guilt beyond all reasonable doubt (Pen. Code, § 1096). Although the judge may in fact have understood this crucial distinction,[2] nevertheless the foregoing remark when coupled with the conflicting testimony and "incredible" circumstances presented in this case, might have gained a reversal on appeal. (See *People* v. *Van Gorden,* 226 Cal.App.2d 634, 638-640 [38 Cal.Rptr. 265], where the trial judge's reported statements demonstrated his misconception of the proper burden of proof.)

Finally, although the record is not entirely clear on the question, there would appear to be some basis for an argument by appellate counsel that defendant was inadequately represented *at trial*. The record suggests that trial counsel may have failed (1) to obtain psychiatric examinations of the twins, to ascertain their ability, and possible motive, to falsely implicate defendant,[3] (2) to obtain medical examinations of the twins, to determine

---

[2]In this connection, the transcript contains a remark by the trial judge that "We don't handle that many criminal matters in this department and I am not sure of the precise process and procedure [for obtaining psychiatric evaluation of the defendant] . . . ." On the other hand, in another remark the trial judge acknowledged the dangers of fabricated testimony in child assault cases and recognized that accordingly "there ought to be a conviction in the mind of the trier of fact beyond a reasonable doubt."

[3]See *Ballard* v. *Superior Court,* 64 Cal.2d 159, 171-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]. Such an examination would seem a minimum protection for a defendant charged with molesting a child, and only the rarest of cases would excuse counsel from obtaining one. As the trial judge indicated in this case, shortly before finding defendant guilty, "I don't know how bright these girls [the twins] are. I don't know what their capacity for fantasy is." The results of a psychiatric examination of the twins might easily have tipped the balance in this close case in favor of defendant, whose strongest defense was that the twins lied about him.

whether molestation actually took place,[4] (3) to obtain medical or other expert testimony in support of a possible defense of diminished capacity through intoxication,[5] (4) to impeach the twins' testimony through cross-examination and use of inconsistent statements in a police report,[6] and (5) to investigate by cross-examination of the twins, or otherwise, defendant's assertion, alluded to at trial, that the twins had made similar complaints against other persons, and had a poor reputation for honesty.[7] It is, of course, conceivable that trial counsel did in fact explore these various approaches and found them fruitless, but defendant's own vigorous assertions to the contrary suggest otherwise. Certainly, on renewal of defendant's appeal, counsel should ascertain whether or not defendant received adequate trial representation. In the event the record is not conclusive of the question, counsel should consider the possibility of alternative relief through habeas corpus.[8]

---

[4]According to the rough "notes" submitted by defendant to the Court of Appeal, a police medical report disclosed "both girls' hymens as intact and undamaged." A probation report in the record suggests that the examining physician concluded that "an allegation that molestation had occurred could neither be proved or disproved."

[5]As noted above, several witnesses believed that defendant was intoxicated at the party. Defendant himself testified that he had been drinking "heavily" but that he remembered all that took place. The trial judge acknowledged the possibility that defendant may have acted with diminished capacity, lacking "the necessary intent," but he rejected the theory since, under defendant's own testimony, "he [defendant] knew everybody who was there at all times, and he knew everything that went on, and he knew when it was time for him to go to bed, so that if something happened it didn't happen while he was without the capacity to understand what was happening." Yet section 288 requires a specific intent to arouse, appeal to or gratify the lust or passion or sexual desires of the defendant or the victim. (*People* v. *Jones,* 42 Cal.2d 219, 223 [266 P.2d 38].) Therefore, expert testimony might have been available to show that defendant's intoxication prevented the formation of such an intent, despite the fact that defendant may have been consciously aware of what he was doing. (Pen. Code, § 22; see *People* v. *O'Tremba,* 4 Cal.App.3d 524, 527-528 [84 Cal. Rpr. 336].)

[6]The police report indicates that the twins also had accused defendant of molesting another child, Lorrie, at the same party. None of the adult witnesses, however, could recall Lorrie's presence at the party, and the prosecution made no attempt to prove this offense at trial. The report also states that each twin reported seeing the other twin being molested; at trial, however, the twins testified to the contrary.

[7]At trial, defendant testified generally that "Debbie would follow whatever Leslie would say," that the twins would "stick together" in their stories, and that defendant had discussed with Leslie "some sexual allegations she had made against other people in the neighborhood." No further evidence was introduced to support defendant's assertions.

[8]See *People* v. *Pena,* 25 Cal.App.3d 414, 422-423 [101 Cal.Rptr. 804]. In view of the fact that defendant has already filed petitions for habeas corpus raising adequacy of trial counsel, which petitions we ordered transferred from the Court of Appeal to this court, we are retransferring those petitions to the Court of Appeal to consider along with defendant's appeal.

Although some of the foregoing matters perhaps were the result of an exercise of trial tactics rather than inadvertence or incompetence, and accordingly would not furnish grounds for reversal (see *People* v. *Najera,* 8 Cal.3d 504, 516-517 [105 Cal.Rptr. 345, 503 P.2d 1353]; *People* v. *Miller,* 7 Cal.3d 562, 569-574 [102 Cal.Rptr. 841, 498 P.2d 1089]), others may have involved the withdrawal of crucial defenses from the case, thereby reducing the trial to a farce or sham (see *In re Saunders,* 2 Cal.3d 1033, 1041-1042 [88 Cal.Rptr. 633, 472 P.2d 921]; *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]). It was trial counsel's duty to investigate carefully all defenses of fact and of law that might have been available to defendant (see *In re Williams,* 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984]), and to obtain such psychiatric and medical evidence as might be relevant to the case (*People* v. *Welborn,* 257 Cal. App.2d 513, 518-523 [65 Cal.Rptr. 8] [failure to raise diminished capacity defense]). As we have explained above (fns. 3, 4 and 5), such evidence might have been crucial to defendant's case.

Therefore, as in *People* v. *Rhoden, supra,* 6 Cal.3d 519, *In re Smith, supra,* 3 Cal.3d 192, and *People* v. *Feggans, supra,* 67 Cal.2d 444, we have concluded that former appellate counsel failed to raise crucial assignments of error which arguably might have resulted in reversal, thereby depriving defendant of the effective assistance of counsel to which he was constitutionally entitled.

The cause is transferred to the Court of Appeal, Fourth Appellate District, Division One, with directions to appoint counsel for appellant and to reconsider his appeal.

Wright, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent.

The majority holds defendant's appellate counsel ineffective for failing to make three arguments: (1) It is "inherently improbable" the assaults occurred because no one in the room even noticed the victims in defendant's lap. (2) The trial judge's comment concerning reasonable doubt indicates defendant was improperly required to prove his innocence. (3) Defendant was inadequately represented *at trial.* However, as the foregoing arguments would have been frivolous, counsel properly did not raise them.[1]

---

[1]Counsel also did not breach his duty to not argue against his client. When a defendant insists on raising an issue counsel recognizes as frivolous, the attorney is in a dilemma: Arguing the issue antagonizes the court and deflects attention from

(1) "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." (*People* v. *Pearson* (1969) 70 Cal.2d 218, 221 [74 Cal.Rptr. 281, 449 P.2d 217]; *People* v. *Lyons* (1956) 47, Cal.2d 311, 320 [303 P.2d 329].) Neither of the two grounds exists here. It certainly is not physically impossible for the assault to have occurred without anyone in the room noticing the victims in defendant's lap. In fact, although defendant admittedly held a third little girl on his lap for as long as 10 minutes, no one but the child's mother noticed. Since the alternate basis for rejection of testimony as inherently improbable requires the falsity to be apparent "without resorting to inferences or deductions," it is incorrect for the majority to assume the defense witnesses were sober and attentive at the party or truthful when they testified. Actually, all but one admitted drinking at the party, and over half were "loaded" in one witness' opinion. The trier of fact may reasonably have concluded that defendant's friends lied to protect him because they were unwilling to see his family suffer the consequences of his shameful conduct.[2]

(2) It would be completely unreasonable to conclude from an offhand remark that a distinguished trial judge of 14 years experience misunderstood the most fundamental principle of criminal law—that a defendant is presumed innocent until proven guilty beyond a reasonable doubt. The proper subject of appellate review is judicial action, not the judge's extemporaneous explanation of his decision to a lay defendant. (See *Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304, 315 [139 P.2d 13].) To suggest this judgment might be overturned on such a ground is "to open the door to mischievous and vexatious practices." (See *DeCou* v. *Howell* (1923) 190 Cal. 741, 751 [214 P. 444].)[3]

(3) To obtain relief because of ineffective trial counsel, "the defendant

---

more meritorious contentions. Refusing to even raise the issue antagonizes the client, giving him the impression he is being denied access to the courts. An apparent solution—filing defendant's argument as a pro. per. brief—merely confronts counsel with another dilemma. Counsel's failure to brief the issue may be attributed to lack of diligence in the absence of explanation, but explanation may be construed as arguing against his client. The comment counsel made here was innocuous.

[2]The majority also suggests the evidence against defendant was insubstantial because the victims' testimony was uncorroborated. In a prosecution for commission of lewd and lascivious acts upon a child under 14 years of age (Pen. Code, § 288), the child's testimony need not be corroborated. (*People* v. *Sylvia* (1960) 54 Cal.2d 115, 122 [4 Cal.Rptr. 509, 351 P.2d 781].) Therefore, absence of corroboration does not render the evidence insubstantial.

[3]Judge Byron F. Lindsley appears to be exceptionally well qualified to try serious criminal prosecutions. (See Arnold, Cal. Courts and Judges Handbook, pp. 449-450.)

must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].) Review of the issue on direct appeal is, of course, limited to the trial court record. (See *In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1]; *People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].) The requisite affirmative showing cannot be made on this record,[4] as the majority virtually concedes: "It is, of course, conceivable that trial counsel did in fact explore these various approaches and found them fruitless . . . ." (*Ante,* p. 141.)

Recognizing the record on appeal may not be "conclusive of the question," the majority directs defendant's present counsel to consider the possibility of alternative relief through habeas corpus. (*Ante,* p. 141.) As counsel below was appointed to represent defendant *on appeal,* he properly limited his representation to matters within the scope of appellate review. Counsel could not expect to be reimbursed for investigating possible grounds for habeas corpus relief, because a defendant's right to appointed counsel has not been extended to applications for collateral relief. Therefore, it is both unfair and unrealistic to suggest that defendant's appointed counsel on appeal was ineffective if he did not conduct such an investigation.

Finally, by emphasizing appellate counsel waived oral argument (*ante,* pp. 138-139), the majority implies submission on the briefs is so unusual as to constitute lack of diligence. To the contrary, last year two-thirds of the criminal cases in the division considering defendant's appeal were submitted without oral argument.[5] Defendant's counsel on appeal demonstrated due diligence in successfully pursuing the one arguable issue

---

[4]On several points, however, the record *is* adequate to show the contrary. Although he admitted drinking "fairly heavily," defendant insisted he remembered "everything that happened" and denied having anything to do with the victims that night. Evidence establishing diminished capacity would have undercut his claim of absolute innocence. Why take that risk if, as the majority suggests, the victims' testimony was inherently improbable.

The police report was so prejudicial to defendant that it would have been suicidal to use it to impeach the victims. One of the twins testified she had once seen defendant similarly molest his own daughter. Defense counsel's successful motion to strike would have been an idle act if he had then introduced a police report stating the nine-year-old child tearfully confirmed that defendant "puts his fingers up me and puts his dingy in me until it hurts."

[5]According to the Clerk for Division One of the Fourth Appellate District, of the 185 criminal cases placed on calendar in 1973, 128 were submitted without argument.

—procedural irregularity of the MDSO commitment—by filing a closing brief.

I would affirm the convictions.

McComb, J., concurred.