Opinion
WENKE, J.
—Appellant was convicted of violating Vehicle Code section 22348, subdivision (a), driving a vehicle upon a highway at a speed greater than 55 miles-per-hour in an area posted for 40 miles-per-hour. The People’s evidence consisted of the testimony of a single police officer who relied totally on a reading from a radar device.
Briefly stated, appellant’s grounds for appeal are: (a) that any evidence as to a radar reading was inadmissible as incompetent because there was no justification of the posted speed limit by means of an engineering and traffic survey as required by Vehicle Code section 40802, subdivision (b); (b) there was no showing as to the radar machine’s accuracy.

Background

The Legislature has determined that evidence as to speed of a vehicle is incompetent if obtained from the use of a speed trap. (Veh. Code, *supp. 19 §§ 40803 and 40804, subd. (a).) The strength of this public policy is reflected in Vehicle Code section 40805 which states: “Every court shall be without jurisdiction to render a judgment of conviction against any person for a violation of this code involving the speed of a vehicle if the court admits any evidence or testimony secured in violation of, or which is inadmissible under this article.” Accordingly, even if a motorist is cited for driving in excess of the temporary maximum speed limit as established by Vehicle Code section 22348, subdivision (a), no evidence can be used that results from a speed trap.
One definition of a speed trap, applicable to this case, is: “A particular section of a highway with a prima facie speed limit... not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation, and where enforcement involves the use of radar ....” (Veh. Code, § 40802, subd. (b).) Therefore, whenever radar is used in conjunction with a prima facie speed limit it is always relevant to determine whether or not the prima facie speed limit has been justified as required by the statute, regardless of the fact that the violation has no relation to any prima facie speed limit.

Engineering and Traffic Survey

We discussed the subject of the justification of prima facie speed limits at length in People v. Halopoff (1976) 60 Cal.App.3d Supp. 1 [131 Cal.Rptr. 531], where we held that in the trial of any speeding case involving the use of radar it is the duty of the People, without request from the defendant, to disclose to the court and to the defendant that radar was involved, and to demonstrate the existence of an engineering and traffic survey to justify the speed limit.
Following Halopoff, we specifically touched on the People’s responsibility with respect to the engineering and traffic survey in People v. Sterritt (1976) 65 Cal.App.3d Supp. 1 [135 Cal.Rptr. 522] where, in footnote 4 at Supp. page 6, we said: “A reading of Halopoff should make clear that we meant that the survey had to be physically produced in the courtroom and that it was the People’s duty to establish that the survey justified the posted speed limit. Our language was explicit. The People must ‘demonstrate the existence of the engineering and traffic survey required by section 40802, subdivision (b).' (See Veh. Code, § 627.)” (Italics in original.)
*supp. 20 The People produced a copy of an engineering and traffic survey of the area in question, completed in 1975. It was attested to by one J. J. Wrenn, traffic engineer. According to Evidence Code section 1531, dealing with certification of copies for evidence, the attestation must state in substance that the copy is a correct copy of the original. This it does. Evidence Code section 1453 tells us: “A signature is presumed to be genuine and authorized if it purports to be the signature, affixed in his official capacity, of: . . . (b) a public employee of any public entity in the United States.” The copy produced by the People and received into evidence by the court complied with these statutory requirements. The certified copy of the survey was admitted into evidence without the benefit of any foundational evidence. We turn now to a discussion of whether this is permissible.
Evidence Code section 1280 provides for the admissibility of public records.[1] It does not attempt to. specify what records are admissible; rather, it establishes the criteria by which this determination can be made.
In addition to the statutory requirements, the courts have imposed some conditions relative to admissibility of a public record: (a) the record must be made by an official pursuant to governmental duty; (Pruett v. Burr (1953) 118 Cal.App.2d 188, 201 [257 P.2d 690]; Roberts v. Permanente Corp. (1961) 188 Cal.App.2d 526, 532-533 [10 Cal.Rptr. 519]), and, (b) the record must be based upon the observation of an informant having a duty to observe and report. (MacLean v. City and County of San Francisco (1957) 151 Cal.App.2d 133, 143 [311 P.2d 158].) In this regard, a record based on the statements of third parties, e.g., an auto accident report compiled by the police, is inadmissible. (Hoel v. City of Los Angeles (1955) 136 Cal.App.2d 295, 309 [288 P.2d 989].)
We should note, in passing, that the inclusion of conclusions and opinions in a record does not render it inadmissible per se. See Jefferson, California Evidence Benchbook (Cont.Ed.Bar 1972) pages 91, 99.[2] The *supp. 21 overriding consideration is whether the record is trustworthy. (Evid. Code, § 1280, subd. (c).)
Engineering and traffic surveys are made pursuant to governmental duty, i.e., they are mandated incident to the establishment of prima facie speed limits (Veh. Code, § 40802, subd. (b); §§ 22354 thru 22358.3), and therefore qualify as public records within the ambit of Evidence Code section 1280. We turn now to the practical problems attendant to the use of these surveys.
Jefferson, on page 97 of his California Evidence Benchbook, discusses the matter of qualifying an official record: “A writing that is admissible under the official records hearsay exception is also admissible under the business records hearsay exception. But there is one significant difference between the two hearsay exceptions. The business records exception requires that the custodian or other qualified witness testify to the identity of the writing and its mode of preparation in every instance. The trial judge may admit an official record or report, however, without necessarily requiring a witness to testify as to its identity and mode of preparation, by taking judicial notice of the identity of the record and its mode of preparation or, upon proof by sufficient independent evidence that the record or report was prepared in such manner as to indicate its trustworthiness.” (Italics in original.)
By way of illustration, he posits a simulated set of facts involving the admissibility of a certified copy of a coroner’s autopsy report. The copy is certified by the custodian of records and purports to bear the signature of the coroner. According to Jefferson, the report is admissible without any further authentication. He reasons, on page 97, thusly: “In this illustration we have no testimony from a custodian or other qualified witness to identify the original autopsy report or the sources of information or the method and time of preparation. This would be fatal to admissibility of the report under the business records hearsay exception. But here the trial judge may take judicial notice that Dr. C is the coroner, that his signature is genuine, that B’s [custodian of coroner’s records] signature on the attestation of the copy is genuine. These are facts not reasonably subject to dispute and capable of accurate determination by resort to reasonably indisputáble sources under Evidence Code section 452. In addition, the evidence satisfies the presumptions of authenticity of official writings and the genuineness of signatures of public employees, found in Evidence Code section 1530 and 1453.”
*supp. 22 It follows then that a court may admit a certified copy of an engineering and traffic survey provided it satisfies Evidence Code sections 1530 and 1453, by way of taking judicial notice. The trial judge must be persuaded that its identity and trustworthiness, as evidenced by its mode of preparation[3] as described in the survey, satisfy the requirements of Evidence Code section 452, subdivision (h).[4]
If the trial judge determines that judicial notice is not appropriate, the custodian of the report or other qualified witness must testify as to its identity and mode of preparation. In this regard, while the witness need not have been involved in the preparation of the particular survey nor be qualified to explain the technical aspects of same, he must establish the following: (a) that the survey was made by and within the scope of duty of a public employee (this information can be obtained by the witness from other public records); (b) the survey report was made at or near the time the information contained therein was obtained (a copy of the survey attesting as to when the survey report was prepared and the time period during which the information contained therein was obtained will suffice provided it is certified pursuant to Evidence Code sections 1453, 1530 and 1531); (c) the sources of information and the method and time of preparation were such as to indicate its trustworthiness (this may be satisfied by testimony showing the survey is based upon the observations of public employees who have a duty to observe the facts and report and record them correctly (People v. Baeske (1976) 58 Cal.App.3d 775, 780 [130 Cal.Rptr. 35]), which information may be gleaned by the witness from other public records and documents).
In the case before us, it appears that the court did in fact take judicial notice of the underlying foundational, facts, consistent with the views *supp. 23 expressed herein, which thereupon rendered the survey admissible pursuant to Evidence Code section 1280.[5]

Police Officer’s Competency to Testify

Appellant’s second ground of appeal is that the police officer, People’s only witness, could not, solely on the basis of a radar machine reading, competently testify as to appellant’s speed because there was no proof of the machine’s accuracy.
For a substantial period of time courts have taken judicial notice of the use, validity and accuracy of radar devices as a scientific method of measuring speed. (People v. MacLaird (1968) 264 Cal.App.2d 972 [71 Cal.Rptr. 191].) However, this is to be distinguished from a determination of the accuracy of a radar reading in a given case.
The police officer, who was the People’s only witness, testified that he had “calibrated,” i.e., adjusted, and tested the radar machine by turning the selector switch as directed and then determining whether the machine gave the appropriate readings. If it had not so performed he would have turned the machine in to his watch commander. This apparently was in accordance with instructions he had received. Other than this, he could not explain the functioning of the radar machine.
It is a daily occurrence in our courts for witnesses to rely on the accuracy of machinery such as X-ray cameras and various kinds of testing devices without being required to explain the functioning of the machine or to vouch for its accuracy. Otherwise, we would constantly be “re-inventing the wheel” thereby imposing an inordinate cost on litigants and causing a great waste of judicial time.
It is sufficient that the operator of a radar machine be familiar with the device and its operation and, recognizing that the device might not be *supp. 24 properly functioning upon occasion, take a reasonable amount of precautionary measures to assure that it is properly operating. The measures taken in this case were sufficient to establish a prima facie showing that the machine was suitably functioning. Accordingly, we hold that the police officer’s testimony was sufficient to establish the accuracy of the radar reading.
The judgment of conviction is affirmed.
Cole, P. J., concurred.

Section 1280. “Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act. condition or event if: (a) The writing was made by and within the scope of duty of a public employee: (b) The writing was made at or near the time of the act, condition, or event; and (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

See People v. O'Tremba (1970) 4 Cal.App.3d 524, at page 528 [84 Cal.Rptr. 336] where the court discusses the existing conflict with respect to whether a hospital record is admissible as evidence of a medical diagnosis contained therein.

Vehicle Code section 627 deals with the preparation of engineering and traffic surveys. It provides that such surveys shall include prevailing speeds, accident records, and highway, traffic and roadside conditions not readily apparent to the driver as well as other requirements deemed necessary by the Department of Transportation. Section 8-03.3. subdivision B. subsections 2 and 3 of the Department of Transportation's Traffic Manual establishes the criteria for the preparation of engineering and traffic surveys.

Section 452. “Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451:... “(h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

The trial court states that “it would probably be appropriate to have this received in evidence by reference instead of judicial notice.” We read this ambivalent statement only to mean that having satisfied itself (by the process of reasoning described above) that the survey met the foundational requirements of Evidence Code sections 1453 and 1531 and the requirements of Evidence Code section 1280 the piece of paper constituting the survey should be physically placed in the record as an exhibit, instead of merely being recognized to be in existence by way of judicial notice.